**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID: 321359
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Cecilia Brown*

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CECILIA BROWN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE CHILDREN'S HOSPITAL OF PHILADELPHIA,<br>CHOP SPECIALTY CARE CENTER – ABINGTON,<br>CHOP SPECIALTY CARE CENTER – KING OF PRUSSIA,<br>BRENDAN JOHNSON, and<br>ROSE DILL,<br><br>　　　　　　Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT** |

**NATURE OF THE ACTION**

1. This is an action for sex discrimination, sexual harassment, hostile work environment, retaliation, aiding and abetting, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq., and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code § 9-1100 et seq.

2. Plaintiff was subjected to repeated sexually inappropriate conduct by her supervisor, Defendant Brendan Johnson, including sexually suggestive conversations, references to

1

sexualized environments, and the display of a shirtless photograph of himself to Plaintiff at her workstation. When Plaintiff opposed that conduct and reported it to Human Resources, she was systematically retaliated against, subjected to pretextual disciplinary actions, blocked from internal transfers, and ultimately forced to resign.

3. Defendants failed to conduct a prompt or adequate investigation despite multiple written and verbal complaints by Plaintiff, as reflected in contemporaneous email communications between Plaintiff and CHOP Human Resources personnel, including HR Business Partners Karla Bustos and Deanna Ellis.

4. Defendants Johnson and Dill aided, abetted, incited, compelled, and coerced Defendant CHOP's unlawful discriminatory and retaliatory acts, within the meaning of the PHRA and the PFPO.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

6. The Court has supplemental jurisdiction over the state and local law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District because the unlawful employment practices occurred in this District and Defendants conduct business within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On January 10, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 530-2025-02701, and dual-filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

9. More than one year has elapsed since filing the Charge. Plaintiff has satisfied all

administrative prerequisites under the PHRA and PFPO.

10. The EEOC issued a Notice of Right to Sue. Plaintiff files this action within ninety (90) days of receipt thereof.

11. All conditions precedent to suit have been satisfied.

**PARTIES**

12. Plaintiff Cecilia Brown is an adult female individual residing in Philadelphia County, Pennsylvania. At all relevant times, Plaintiff was an employee of Defendants and entitled to the protections of Title VII, the PHRA, and the PFPO.

13. Defendant The Children's Hospital of Philadelphia ("CHOP") is a Pennsylvania nonprofit corporation conducting business at 2716 South Street, 20th Floor, Philadelphia, PA 19146. At all relevant times, CHOP was Plaintiff's employer within the meaning of Title VII, the PHRA, and the PFPO. CHOP employed fifteen (15) or more employees at all relevant times.

14. Defendant CHOP Specialty Care Center – Abington is located at 1840 Susquehanna Road, Abington, PA 19001, and operates under CHOP's corporate umbrella. At all relevant times, it was Plaintiff's joint employer.

15. Defendant CHOP Specialty Care Center – King of Prussia is located at 550 South Goddard Blvd, North Entrance, King of Prussia, PA 19406, and operates under CHOP's corporate umbrella. At all relevant times, it was Plaintiff's joint employer.

16. Defendants CHOP, CHOP Specialty Care Center – Abington, and CHOP Specialty Care Center – King of Prussia (hereinafter collectively "Defendant CHOP") operate under the same corporate umbrella and are the single and/or joint employer of Plaintiff.

17. Defendant Brendan Johnson ("Johnson") is an adult male individual who, at all relevant

times, served as Plaintiff's direct supervisor in his capacity as Urgent Care Operations Supervisor. Johnson subjected Plaintiff to sexual harassment and retaliation as described herein. At all relevant times, Johnson acted within the course and scope of his employment with Defendant CHOP. Johnson aided, abetted, incited, compelled, and coerced the unlawful discriminatory and retaliatory practices alleged herein, within the meaning of the PHRA and the PFPO.

18. Defendant Rose Dill ("Dill") is an adult female individual who, at all relevant times, served as Urgent Care Operations Manager with supervisory authority over Plaintiff. Dill co-authored pretextual disciplinary actions against Plaintiff, reported unsubstantiated allegations that formed the basis for additional discipline, and actively participated in the retaliatory conduct described herein. At all relevant times, Dill acted within the course and scope of her employment with Defendant CHOP. Dill aided, abetted, incited, compelled, and coerced the unlawful discriminatory and retaliatory practices alleged herein, within the meaning of the PHRA and the PFPO.

## FACTUAL ALLEGATIONS

*Employment Background*

19. On or about August 15, 2022, Plaintiff began working for Defendant CHOP as a Patient Services Representative ("PSR") in CHOP's Urgent Care and Specialty Care Centers.

20. Plaintiff worked at Defendant CHOP's King of Prussia location Monday through Wednesday and the Abington location Thursday through Saturday.

21. Prior to January 2024, Plaintiff received positive feedback in her position and was never reprimanded or told that she had poor performance.

22. In or about January 2024, Defendant Johnson was promoted to Urgent Care Operations

4

Supervisor and became Plaintiff's direct supervisor. In that capacity, Johnson had the authority to discipline Plaintiff, evaluate her performance, and influence transfer and promotion decisions.

*Escalating Sexual Harassment*

23. Once Defendant Johnson completed his training for the supervisor position, he began to subject Plaintiff to sexual harassment.

24. Johnson initiated repeated non-work-related conversations of a personal and sexually suggestive nature with Plaintiff at her workstation.

25. Johnson deliberately waited until Plaintiff was alone at the front desk at the Abington location—particularly after Specialty Care staff left for the day—to initiate these conversations. Upon information and belief, Johnson timed these approaches to isolate Plaintiff for the purpose of engaging in inappropriate conduct.

26. Plaintiff was unable to excuse or remove herself from these conversations because she was stationed at the front desk and required to remain there as part of her job duties.

27. On multiple occasions, Johnson discussed his brother's alleged appearance on the television show "Survivor" and described parties involving women and sexualized environments.

28. Johnson repeatedly told Plaintiff that female employees at his prior place of employment asked to attend these parties with him. Upon information and belief, Johnson made these statements to pressure Plaintiff into expressing interest in attending such events with him.

29. On every occasion Johnson raised the subject of his brother's parties, Plaintiff attempted to change the conversation because she was uncomfortable.

30. On one occasion, Johnson told Plaintiff that his brother had been featured in a magazine

and that he had asked his brother if he, too, could appear in the magazine. Johnson then took out his cell phone and displayed a shirtless photograph of himself to Plaintiff at her workstation.

31. The display of the shirtless photograph was unwelcome, inappropriate, humiliating, and caused Plaintiff immediate emotional distress.

32. The photograph also triggered Plaintiff because, prior to Defendant Johnson's conduct, Plaintiff had been sexually harassed by a newly hired male employee at the Abington location. That employee showed Plaintiff personal photographs of himself and stated, "You never know, you could be with me next," while placing his hand on Plaintiff's left leg. Plaintiff reported this conduct to her supervisor and to Human Resources personnel. Plaintiff initially feared further retaliation and did not escalate the matter beyond reporting it, until that same employee was later accused of assaulting other female employees, at which time Human Resources requested Plaintiff's statement regarding her experience.

33. Plaintiff informed Johnson that his conduct was inappropriate and constituted sexual harassment.

*Protected Activity and Employer Notice*

34. On or about March 9, 2024, Plaintiff verbally reported Johnson's sexually harassing conduct to HR Business Partner Karla Bustos.

35. On or about March 19, 2024, Plaintiff followed up in writing via email to Bustos, documenting concerns about her supervisor's conduct, the hostile work environment, and unresolved workplace issues. Bustos responded by asking for additional detail.

36. On or about March 19, 2024, Plaintiff responded to Bustos with a detailed written

account of her concerns, including that she had addressed matters to her director and supervisor, that no resolutions had been provided, and that supervisory conduct at the locations was unprofessional.

37. Plaintiff also escalated her concerns to senior leadership, including Kisha Horton, when HR failed to follow up on her initial complaints.

38. Plaintiff submitted written complaints and appeals regarding harassment and retaliation throughout her remaining tenure.

39. Despite CHOP's written Non-Discrimination, Harassment and Retaliation Policy (Policy No. A-4-18) requiring that "[t]he Hospital's Human Resources Department will conduct a prompt and appropriate investigation of reports of discrimination, discriminatory harassment and retaliation," no adequate investigation of Plaintiff's sexual harassment complaints occurred.

40. Upon information and belief, CHOP's Human Resources personnel were aware of Plaintiff's protected complaints yet failed to conduct a prompt, impartial, or thorough investigation, instead relying on the representations of the accused supervisor, Defendant Johnson, and his direct report, Defendant Dill. CHOP failed to separate the accused supervisor from influence over the investigation or the continued terms and conditions of Plaintiff's employment. This institutional indifference to Plaintiff's complaints demonstrated a reckless disregard for Plaintiff's federally and state-protected rights.

*Retaliation*

41. After Plaintiff opposed Johnson's sexual harassment and informed him that his conduct was inappropriate, Johnson's demeanor toward Plaintiff changed.

42. Johnson publicly expressed anger and stated that he was "done being Mr. Nice Guy" and

announced he would begin writing employees up.

43. On or about May 30, 2024, Plaintiff received a Level 1 General Counseling Disciplinary Action Report ("DAR") from Defendants Johnson and Dill, citing two Press Ganey patient complaints.

44. The first Press Ganey complaint, dated May 5, 2024, was submitted by a patient who was also a CHOP physician, and described an interaction at the King of Prussia location. The second complaint, dated May 22, 2024, alleged that Plaintiff was rude at check-in.

45. Plaintiff disputed the accuracy of both complaints and informed Johnson and Dill that she had witnesses who could corroborate her account and that security camera footage would support her position.

46. Defendants Johnson and Dill failed to interview Plaintiff's witnesses, including Sandra, a supervisor who was present during the incident underlying at least one complaint.

47. Defendants failed to review available security camera footage.

48. Upon information and belief, Defendant Johnson spearheaded the May 30 write-up in retaliation for Plaintiff's prior opposition to his sexual harassment, and Defendant Dill actively participated in issuing the discipline.

49. On or about June 1, 2024, Plaintiff appealed the Level 1 DAR to Human Resources and Employee Relations.

50. On or about July 16, 2024, Employee Relations upheld the DAR without conducting an independent investigation, relying instead on Johnson's characterization of events.

51. In or about July 2024, Defendants Johnson and Dill issued Plaintiff a performance evaluation reflecting scores that Plaintiff had not previously received and that were inconsistent with her prior performance record. The evaluation cited deficiencies in the

registration process, billing errors, and other matters that had never been raised with Plaintiff during Johnson's supervision prior to her protected activity.

52. On or about August 7, 2024, Defendant Dill reported to Human Resources that Plaintiff had used her cell phone to video record a patient interaction. This report was based solely on Dill's characterization of a phone conversation with Plaintiff.

53. Plaintiff denied recording any patient.

54. No video recording was ever produced or recovered. No parent or patient submitted a complaint about being recorded. No documentary evidence corroborated the allegation.

55. On or about August 27, 2024, Defendant CHOP issued Plaintiff a Level 2 DAR for the alleged recording, based on Dill's unsubstantiated report.

56. The disciplinary actions were used to prevent Plaintiff from transferring to other internal positions. Under CHOP's internal policies, employees with active disciplinary actions are barred from internal transfers for twelve (12) months following the date of discipline.

57. Plaintiff applied for at least two internal positions during this period. Plaintiff was initially informed that she was a strong candidate for these roles but was subsequently denied following supervisory review. Upon information and belief, the denials were based on retaliatory feedback from Defendants Johnson and/or Dill.

58. In its Position Statement to the EEOC dated March 24, 2025, Defendant CHOP incorrectly asserted that "Complainant submitted a complaint of alleged sexual harassment after she received disciplinary action." This assertion is contradicted by Plaintiff's contemporaneous email communications with HR Business Partner Karla Bustos beginning on or about March 19, 2024—more than two months before the first disciplinary action on May 30, 2024.

*Constructive Discharge*

59. Despite repeated complaints to Human Resources and Employee Relations, Plaintiff received no substantive resolution of her harassment and retaliation claims.

60. On or about August 26, 2024, Plaintiff sent a detailed written communication to HR Business Partner Deanna Ellis outlining the full history of her complaints, the failure to investigate, and the ongoing retaliation. Plaintiff expressed her intent to continue advocating for herself and stated that she would not be silenced.

61. On or about August 28, 2024, Ellis responded by acknowledging receipt of Plaintiff's documentation, offering to meet in person, but did not address the substance of Plaintiff's harassment or retaliation complaints.

62. On or about August 28, 2024, Plaintiff responded to Ellis expressing frustration that HR's position appeared aligned with management rather than addressing employee concerns, and that despite her good-faith efforts to resolve the situation, her complaints had not been fairly investigated.

63. Plaintiff was isolated from supportive coworkers.

64. Plaintiff's working conditions became intolerable as a result of: (a) ongoing and unresolved sexual harassment; (b) pretextual and retaliatory disciplinary actions; (c) blocked internal transfers that trapped Plaintiff in her current role under the supervision of her harassers; (d) HR's repeated promises of follow-up with no substantive resolution; and (e) institutional indifference to her complaints.

65. On or about September 13, 2024, Plaintiff submitted her resignation, effective September 22, 2024.

66. Upon information and belief, Defendant CHOP processed Plaintiff's resignation

immediately, over a weekend, without conducting an exit interview or making any effort to retain Plaintiff or address her complaints.

67. Plaintiff's resignation was the direct and foreseeable result of Defendants' discriminatory and retaliatory conduct. A reasonable person in Plaintiff's position would have felt compelled to resign under these circumstances.

68. Plaintiff's constructive discharge constitutes a tangible employment action, thereby precluding any affirmative defense under the framework established in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

*Damages*

69. At the time of her constructive discharge, Plaintiff earned approximately $23.00 per hour at Defendant CHOP.

70. Plaintiff was unemployed for approximately fifteen (15) months following her resignation. Plaintiff diligently sought alternative employment during this period.

71. Plaintiff mitigated her damages by diligently seeking alternative employment and accepting work below her prior compensation level.

72. Plaintiff accepted subsequent employment at a rate of pay lower than she earned at Defendant CHOP.

73. Plaintiff suffered lost wages, lost benefits, loss of deferred compensation of approximately $5,000.00, and loss of employer retirement contributions.

74. Plaintiff experienced severe emotional distress, anxiety, humiliation, and financial hardship as a direct result of Defendants' conduct. Plaintiff's distress included anxiety, sleep disturbance, and emotional anguish associated with financial instability.

75. Plaintiff sought therapy to address the psychological impact of Defendants' conduct but was forced to discontinue treatment due to financial constraints resulting from her loss of employment.

76. Defendants acted with reckless indifference to Plaintiff's federally protected rights, and their conduct was malicious, willful, and outrageous, warranting the imposition of punitive damages.

## COUNT I
### Title VII – Sex Discrimination and Hostile Work Environment
### (Against Defendant CHOP)

77. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

78. Defendant CHOP subjected Plaintiff to unwelcome sexual conduct because of her sex.

79. The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

80. Plaintiff was detrimentally affected by the conduct, and the detrimental effect was objectively reasonable.

81. The harassment was perpetrated by Defendant Johnson, a supervisor with direct authority over Plaintiff's employment, including the power to discipline, evaluate performance, and influence transfer and promotion decisions, thereby subjecting Defendant CHOP to vicarious liability.

82. Plaintiff's constructive discharge constitutes a tangible employment action, precluding the *Faragher/Ellerth* affirmative defense.

## COUNT II
### Title VII – Retaliation
### (Against Defendant CHOP)

83. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

84. Plaintiff engaged in protected activity by opposing sexual harassment and reporting Defendant Johnson's conduct to Human Resources, beginning on or about March 9, 2024, and continuing through the remainder of her employment.

85. Defendant CHOP subjected Plaintiff to materially adverse employment actions, including: (a) issuance of a pretextual Level 1 DAR on May 30, 2024; (b) issuance of a pretextual Level 2 DAR on August 27, 2024, based on unsubstantiated allegations; (c) issuance of disciplinary actions that disqualified Plaintiff from internal transfer opportunities under CHOP's twelve-month transfer bar policy; (d) denial of at least two internal transfer applications following retaliatory supervisory review; (e) issuance of a retaliatory performance evaluation; and (f) constructive discharge, which materially altered the terms and conditions of Plaintiff's employment.

86. There is a causal connection between Plaintiff's protected activity and Defendants' adverse actions. The adverse actions began shortly after Plaintiff's protected activity and escalated in direct response to her continued complaints.

87. Defendants' stated reasons for the adverse actions were pretextual. The disciplinary actions were based on unsubstantiated or uncorroborated allegations, Defendants refused to review available evidence or interview Plaintiff's witnesses, and the performance deficiencies cited in Plaintiff's evaluation were never raised prior to her protected activity.

**COUNT III**
**PHRA – Sex Discrimination and Hostile Work Environment**
**(Against Defendant CHOP)**

88. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

89. Defendant CHOP violated the PHRA, 43 P.S. § 955(a), by subjecting Plaintiff to unlawful

sex discrimination and a hostile work environment for the same reasons set forth in Count I.

## COUNT IV
## PHRA – Retaliation
## (Against Defendant CHOP)

90. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

91. Defendant CHOP violated the PHRA, 43 P.S. § 955(d), by retaliating against Plaintiff for opposing unlawful discrimination and for filing complaints of harassment, for the same reasons set forth in Count II.

## COUNT V
## PHRA – Aiding and Abetting
## (Against Defendants Johnson and Dill)

92. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

93. The PHRA makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act declared by the PHRA to be an unlawful discriminatory practice.

94. Defendant Johnson aided and abetted Defendant CHOP's unlawful discriminatory and retaliatory practices by: (a) directly subjecting Plaintiff to sexual harassment; (b) initiating and authoring pretextual disciplinary actions against Plaintiff in retaliation for her protected activity; (c) providing retaliatory supervisory feedback that blocked Plaintiff's internal transfer applications; and (d) issuing a retaliatory performance evaluation designed to create a false paper trail of poor performance.

95. Defendant Dill aided and abetted Defendant CHOP's unlawful discriminatory and retaliatory practices by: (a) co-authoring the pretextual Level 1 DAR issued to Plaintiff on May 30, 2024; (b) reporting the unsubstantiated allegation that Plaintiff recorded a patient interaction, which formed the sole basis for the Level 2 DAR issued on August

27, 2024; (c) participating in the issuance of a retaliatory performance evaluation; and (d) failing to report or address Johnson's sexually harassing conduct despite her supervisory obligation to do so under CHOP's Non-Discrimination, Harassment and Retaliation Policy.

96. Defendants Johnson and Dill were personally involved in and actively participated in the discriminatory and retaliatory acts alleged herein. Their conduct was not merely passive awareness, but affirmative facilitation of unlawful employment practices.

97. As a direct and proximate result of the aiding and abetting conduct of Defendants Johnson and Dill, Plaintiff has suffered damages as set forth herein.

## COUNT VI
## PFPO – Sex Discrimination and Hostile Work Environment
## (Against Defendant CHOP)

98. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

99. Defendant CHOP violated the Philadelphia Fair Practices Ordinance by subjecting Plaintiff to unlawful sex discrimination and a hostile work environment for the same reasons set forth in Count I.

## COUNT VII
## PFPO – Retaliation
## (Against All Defendants)

100. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

101. Defendants violated the Philadelphia Fair Practices Ordinance by retaliating against Plaintiff for opposing unlawful discrimination and for filing complaints of harassment, for the same reasons set forth in Count II.

102. Defendants Johnson and Dill are individually liable for their direct participation in the retaliatory conduct alleged herein.

## COUNT VIII
## PFPO – Aiding and Abetting
## (Against Defendants Johnson and Dill)

103.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

104.    Defendants Johnson and Dill violated the PFPO's prohibition on aiding, abetting, inciting, compelling, or coercing unlawful discriminatory practices, for the same reasons set forth in Count V.

105.    As a direct and proximate result of the aiding and abetting conduct of Defendants Johnson and Dill, Plaintiff has suffered damages as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

    A.    Back pay and lost benefits;

    B.    Front pay;

    C.    Compensatory damages for emotional distress, humiliation, and mental anguish;

    D.    Punitive damages against all Defendants;

    E.    Liquidated damages where applicable;

    F.    Reasonable attorneys' fees and costs of suit;

    G.    Pre-judgment and post-judgment interest;

    H.    Injunctive and declaratory relief as appropriate; and

    I.    Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

    Respectfully submitted,

                    DEREK SMITH LAW GROUP, PLLC

                    */s/ Ian M. Bryson, Esquire*
                    IAN M. BRYSON, ESQUIRE
                    450 7th Avenue, 30th Floor
                    New York, NY 10123
                    Direct: (267) 857-0849
                    ian@dereksmithlaw.com
                    Attorneys for Plaintiff, Cecilia Brown

Dated: February 13, 2026
       New York, NY